UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KMW GROUP, INC., d/b/a SKYTRON, and
SKYTRON, LLC,

       Plaintiffs,                                     Case No. 1:11-cv-1212

v.                                                    HON. JANET T. NEFF

AWAREPOINT CORPORATION,

       Defendant.
_____/

AWAREPOINT CORPORATION,

       Plaintiff,                                       Member Case: 1:12-cv-94

v.

KMW GROUP, INC., d/b/a SKYTRON,
UNKNOWN PARTIES (named as Does 1-10),
and SKYTRON, LLC

       Defendants.
_____/

## **OPINION**

Pending before the Court is Defendant Awarepoint Corporation's Motion for Enforcement of Choice-of-Law Provisions (Dkt 119),[1] seeking to enforce contract provisions that would apply New York and Delaware law to the parties' instant disputes arising under two supply agreements (New York law for claims arising under the 2007 Supply Agreement and Delaware law for claims

---

[1] Unless otherwise noted, the party references and docket citations in this Opinion refer to the lead case, no. 1:11-cv-1212, the docket of which provides cross-references for documents also filed in the member case, no. 1:12-cv-94.

arising under the 2009 Supply Agreement).  Plaintiff KMW Group, Inc. (d/b/a "Skytron") has filed a Response (Dkt 120), and Defendant has filed a Reply (Dkt 121).  For the reasons that follow, the Court grants the motion.

## I.  Factual Background

The parties began a business relationship in October 2007 with the execution of a supply agreement (the "2007 Supply Agreement") involving asset tracking hardware and software for medical facilities and hospitals (Joint Statement of Material Facts (JSMF), Dkt 122, ¶ 1; Dkt 119-1 at p. ID# 545; Dkt 120 at p. ID# 553).  On December 31, 2009, the parties executed another supply agreement (the "2009 Supply Agreement") governing their business relationship beginning on January 1, 2010, which superseded and replaced the 2007 Supply Agreement (JSMF ¶¶ 4-5). Because some terms of the 2009 Supply Agreement remained unresolved at the time the parties signed the Agreement on December 31, 2009, they also executed a "Memorandum of Understanding" (the "MOU"), stating that they would finalize the 2009 Supply Agreement on or before January 8, 2010 (*id.* ¶ 7).  In accordance with the MOU, the parties executed a "First Amendment to Supply Agreement," finalizing and confirming their business arrangement for 2010 (the "January 2010 Amendment") (*id.* ¶ 8).

The 2007 Supply Agreement provides that New York law governs the agreement:

> **16.    Governing Law.**  This Agreement will be considered to have been made in, and will be governed by and interpreted according to the laws of, the State of New York without regard to conflicts of laws principles, or any other principles that would require the application of a different body of law.

(JSMF ¶ 2).  The term of the 2007 Supply Agreement originally extended only through the end of 2008, but the contract automatically renewed for an additional year (*id.* ¶ 3).

The 2009 Supply Agreement likewise designated the law of the state of New York as the controlling law for the contract:

> **16.     Governing Law.**  This Agreement will be considered to have been made in, and will be governed by and interpreted according to the laws of, the State of New York without regard to conflicts of laws principles, or any other principles that would require the application of a different body of law.  The United Nations Convention on Contracts for the International Sale of Goods is expressly excluded from this Agreement.

(JSMF ¶ 9).

However, the January 2010 Amendment modified the choice of law provision in the 2009 Agreement, stating as follows:

> Section 16 [of the 2009 Supply Agreement] shall be modified to reflect Delaware as the choice of jurisdiction.

(JSMF ¶ 10).

On November 14, 2011, Skytron filed suit against Awarepoint Corporation seeking damages for breach of the supply agreements and for tortious interference of business expectancy, lead case 1:11-cv-1212.  On January 30, 2012, a second case, filed by Awarepoint against Skytron and other unnamed parties in California, was transferred to this district, member case 1:12-cv-94, seeking declaratory relief and damages from Skytron and others for breach of the supply agreements.

## II. Discussion

The parties dispute whether the choice of law provisions in the supply agreements apply to the claims and counterclaims in these consolidated lawsuits.  They seek the Court's determination on the choice of law as a threshold matter.

"[W]hen sitting in diversity we must apply the choice of law rules of the forum state to determine which state's laws govern the dispute." *Town of Smyrna, Tenn. v. Municipal Gas*

3

*Authority of Georgia*, 723 F.3d 640, 645 (6th Cir. 2013).  "Under the well-established Supreme Court precedent in *Erie R.R. v. Tompkins*, '[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.'" *Performance Contracting, Inc. v. DynaSteel Corp.*, ___ F.3d ___, 2014 WL 1663077, at *3 (6th Cir. Apr. 28, 2014) (quoting *Erie,* 304 U.S. 64, 78 (1938)).  "'[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.'" *Performance Contracting*, 2014 WL 1663077, at *3 (citation omitted).  Accordingly, the choice-of-law rules to be applied in this case are those of the State of Michigan.  *See id.*

"Under Michigan law, 'parties may, in general, agree [in a choice-of-law provision] that all causes of action pertaining to a particular matter will be ... subject to the law of a particular jurisdiction.'" *Performance Contracting*, 2014 WL 1663077, at *9 (White, J., concurring in part) (quoting *Offerdahl v. Silverstein*, 569 N.W.2d 834, 835 (Mich. Ct. App. 1997)).  "However, when parties agree to a choice-of-law provision and there is a conflict-of-law dispute, 'the approach set forth in the Restatement (Second) of Conflict of Laws' applies."  *Id.* (quoting *Johnson v. Ventra Group, Inc.,* 191 F.3d 732, 738 (6th Cir. 1999)); *see also Banek Inc. v. Yogurt Ventures, U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir. 1993); *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703 (Mich. 1995).

Under the Restatement, § 187(2) (1988), a contractual choice of law provision will be binding unless either:

> "(a)  the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b)  application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188,

would be the state of the applicable law in the absence of an effective choice of law by the parties."

*Johnson,* 191 F.3d at 738; *see* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (2013). If either exception is met, then the court will not enforce a choice-of-law provision. *See Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 837 (E.D. Mich. 2000).

Awarepoint argues that neither exception to enforcement of the choice-of-law provisions in the parties' agreements exists in this case. Skytron argues that the lack of any substantial relationship between the state of New York and either of the parties or their agreements, is fatal to Awarepoint's argument that New York law applies. And with regard to Delaware law, the 2010 Amendment does not contain an effective choice-of-law provision, but instead a "choice of jurisdiction" clause, which is properly considered as a forum selection clause.

First, with regard to the January 2010 Amendment provision that Delaware is "the choice of jurisdiction," it is undisputed that Awarepoint is a corporation formed and existing under the laws of the state of Delaware.[2] Thus, Awarepoint has a substantial relationship with Delaware, and under the Restatement, this choice of law is binding unless § 187(2)(b) applies. *See Kelly Services, Inc. v. Marzullo*, 591 F. Supp. 2d 924, 932 (E.D. Mich. 2008).

Although Skytron argues that the language of the January 2010 Amendment is not effective as a "choice of law" provision, because "it never actually chooses a body of law" (Dkt 120 at p. ID# 560), the Court finds this argument unpersuasive. The 2010 Amendment states that "Section 16" of the 2009 Supply Agreement is modified to reflect Delaware as the choice of jurisdiction. Section

---

[2]Additionally, as discussed *infra* with respect to the 2007 Agreement, the designated territory for Skytron to re-sell Awarepoint products encompassed Delaware and Skytron seeks to recover for such sales in Delaware.

16 addresses the "Governing Law" and substantively addresses only the choice of law and conflict of laws principles, not forum selection. Section 16's only reference to a "jurisdiction" is to the laws of "the State of New York." The Court concludes that the January 2010 Amendment unambiguously modifies Section 16 to substitute Delaware for New York, and thereby provide that the Agreement "will be governed by and interpreted according to the laws of the State of Delaware …." *See Performance Contracting*, 2014 WL 1663077, at *7 (citing *Lawyers Title Ins. Corp. v. First Federal Sav. Bank & Trust*, 744 F. Supp. 778, 783 (E.D. Mich. 1990) and *Nib Foods, Inc. v. Mally*, 246 N.W.2d 317, 321 (Mich. Ct. App. 1976)). Accordingly, the 2009 Supply Agreement provides for the application of Delaware law, and is binding unless that law would be contrary to a fundamental policy of a state which has a materially greater interest, in this case, Michigan.

Second, with regard to the 2007 Supply Agreement, which provides for the application of New York law, Awarepoint argues that the exception in § 187(2)(a) does not apply because Skytron's designated territory for re-selling Awarepoint's products encompassed New York, and Skytron seeks to recover damages arising from events that occurred in New York. Skytron does not dispute this contention, but argues that "only limited sales occurred in New York" and the activities cited by Awarepoint in fact took place in 2010, when Awarepoint contends Delaware law applied (Dkt 120 at p. ID# 558). However, Awarepoint points out that the supply agreements were considered executed in New York, and Skytron had the potential for significant sales in New York, since the state of New York has over 200 hospitals, more hospitals than 92 percent of all other states. Under these circumstances, this Court cannot conclude that New York "has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." *See* § 187(2)(a).

6

The remaining question then is whether application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest under § 187(2)(b). Awarepoint contends that no Michigan policy would militate against enforcing the parties' chosen choice of law. Further, Michigan law expressly recognizes that contractual provisions limiting remedies and damages in connection with the sale of goods are valid and enforceable. Skytron does not dispute this contention but notes that this case also includes a tort claim that does not arise from the parties' contracts, and is therefore governed by Michigan law. Skytron argues that applying Michigan law to all claims in this case promotes judicial efficiency and that applying different state law to the separate claims would be "confusing, inefficient and unworkable" (Dkt 120 at p. ID# 554).

Skytron's point is well-taken. It appears that the application of the parties' choice of law in the supply agreements could result in the application of New York, Delaware, and Michigan law to varying aspects of these consolidated cases, which may unduly complicate the cases and be overwhelmingly burdensome for the Court. However, the parties do not address the distinctions in the applicable substantive state law, if any, and thus, the actual effect of this complication cannot yet be determined. While this is an issue that may warrant further consideration, it does not justify an exception under § 187(2)(b).

"'[I]t is undisputed that Michigan's public policy favors the enforcement of contractual ... choice-of-law provisions.'" *Performance Contracting*, 2014 WL 1663077, at *9-10 (White, J., concurring in part) (quoting *Turcheck v. Amerifund Fin., Inc.,* 725 N.W.2d 684, 688 (Mich. Ct. App. 2006)). Here, the Court concludes that the parties' contractual choice of law is properly enforced.

### III. Conclusion

The Court concludes that the choice of law in these cases is governed by the parties' agreements. Defendant Awarepoint Corporation's Motion for Enforcement of Choice-of-Law Provisions is therefore granted.

An Order will be entered consistent with this Opinion.


Dated: June  9 , 2014                             /s/ Janet T. Neff
                                                  JANET T. NEFF
                                                  United States District Judge